[Civ. No. 44762. Second Dist., Div. Three. May 30, 1975.]

ELIZABETH NORDAHL, Plaintiff and Respondent, v.
DEPARTMENT OF REAL ESTATE, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Arthur C. de Goede and Richard W. Bakke, Deputy Attorneys General, for Defendant and Appellant.

Kurtzman, Sarfaty & Magasinn and Joseph Sarfaty for Plaintiff and Respondent.

**OPINION**

**POTTER, J.**—Appellant, State of California Department of Real Estate, appeals from an order directing payment of an unsatisfied final judgment out of the Real Estate Education Research, and Recovery Fund, pursuant to Business and Professions Code section 10471. Respondent, Elizabeth Nordahl, recovered a judgment against Ramon Franzalia, a real estate broker licensed pursuant to the provisions of part I of division IV of the Business and Professions Code. The judgment was in the sum of $7,500 principal "together with interest thereon at the rate of seven percent (7%) per annum from June 25, 1968 in the amount of $2056.97, and attorneys fees of $650.00, and costs and disbursements expended by the plaintiff in the sum of $151.10." In addition, "the sum of $2,000.00 as and for exemplary and punitive damages" was awarded.

Upon application by respondent pursuant to section 10471 of the Business and Professions Code, the trial court, in the action in which said judgment was rendered, ordered payment to respondent out of the Real Estate Education, Research and Recovery Fund of "the principal sum of $7,500.00, plus interest in judgment of $2,056.97, and costs of $151.10, for a total of Nine Thousand, Seven Hundred Eight and 07/100 Dollars ($9,708.07), and no more."

The trial court received evidence in support of respondent's application in the form of testimony from Franzalia. He admitted that he had received the $7,500 from respondent on or about June 25, 1968, with the understanding that he was to invest it for respondent so as to produce a 10 percent return, and that in fact he had put the funds into his private account and used it for general business purposes.

The order appealed from is in effect a final judgment against appellant and consequently is appealable. (Code Civ. Proc., § 904.1.)

Appellant does not question the propriety of the order except insofar as it ordered the commissioner to pay the interest in the sum of $2,056.97 and the costs of $151.10. Appellant contends the latter two items are not made recoverable from the fund by the provisions of section 10471 of the Business and Professions Code. Said section, as amended in 1971, provides as follows:

"When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, and which cause of action occurred on or after July 1, 1964, the aggrieved person may, upon . . . the judgment becoming final, file a verified application in the court in which the judgment was entered for an order directing payment out of the Real Estate Education, Research and Recovery Fund of the amount of actual and direct loss in such transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, provided that nothing shall be construed to obligate the fund for more than ten thousand dollars ($10,000) per transaction regardless of the number of persons aggrieved or parcels of real estate involved in such transaction.

"A copy of the verified application shall be served upon the commissioner and the judgment debtor and a certificate or affidavit of such service filed with the court."

Appellant, therefore, concedes that the judgment, insofar as it ordered repayment of the $7,500 principal amount invested by respondent with Franzalia was a judgment "under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required." Appellant contends, however, that recovery pursuant to section 10471 is limited to "the amount of actual and direct loss in such transaction" and that the interest in the sum of $2,056.97 and the costs of $151.10 were not actual and direct loss in such transaction. Respondent contends to the contrary. The case, therefore, presents the following issues:

*Issues*

1. Is interest awarded by judgment as part of the recovery for misappropriation of trust funds a part of said judgment representing "actual and direct loss in such transaction"?

2. Does the judgment for costs in such a case represent actual and direct loss in such transaction?

The question presented by this appeal is a matter of first impression. Section 10471 of the Business and Professions Code has been construed in only two decisions of appellate courts of this state. One of these was decided prior to the amendment of this section in 1969.

In *Wolff* v. *Hoaglund,* 11 Cal.App.3d 227 [89 Cal.Rptr. 778], the language of the section as originally enacted in 1963[1] was controlling: A husband and wife had recovered a joint judgment against a real estate salesman relating to community real property turned over to him for sale. The order of the trial court awarded each plaintiff the maximum $10,000 authorized by the section. The order was reversed on the ground that only the husband, as manager of the community property, was entitled to an award. The court stated the following concerning the purpose of the statute (11 Cal.App.3d at p. 234):

"An examination of the statute, however, indicates that the fund is financed (§ 10470) by fees exacted from licensed brokers and salesmen. Recovery from the fund is limited to circumstances where the defrauding licensee has no assets from which to satisfy the judgment (§ 10472), and recovery is limited in the amount payable to any one judgment creditor (§ 10471), and with respect to the amount allocable for the liability of any one licensee (§ 10474). From the foregoing it appears that the Legislature intended minimum and limited rather than maximum benefits to those otherwise qualifying.

"If an award is made to both the wife and husband, the sum recovered by the former, under principles reviewed above, would be subject to management and control of the husband. If double recovery is allowed on that basis that each spouse has a separate beneficial interest in the

[1]"When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person licensed under this part, upon grounds of fraud, misrepresentation or deceit with reference to any transaction for which a license is required under this part and which cause of action occurred on or after July 1, 1964, the aggrieved person may, upon termination of all proceedings including reviews and repeals in connection with the judgment, file a verified application in the court in which the judgment was entered for an order directing payment out of the Real Estate Education, Research and Recovery Fund of the amount of *actual damages* up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment.

"A copy of the verified application must be served upon the commissioner and a certificate or affidavit of such service filed with the court." (Bus. & Prof. Code, § 10471.) (Italics added.)

cause of action and judgment against the licensee, it is difficult to distinguish the case of a trustee, executor, administrator, or other representative, who, on being defrauded, could insist on an award from the fund for each of the persons beneficially interested in the cause of action thereby arising, if other factors for recovery were present. It is concluded that the husband, as manager of the community property, is alone entitled to an award from the fund, and that the wife gained no greater rights by the stipulated judgment."

The other case, *Circle Oaks Sales Co. v. Smith,* 16 Cal.App.3d 682 [94 Cal.Rptr. 232], arose after the 1969 amendment to section 10471. In that case the respondent had recovered judgment against a real estate broker for $6,500 damages for fraud, and $3,000 representing treble damages for conversion of a $1,000 fee advanced. The judgment also included costs. The real estate commissioner was ordered "to pay the entire judgment, and costs, from the Fund." On appeal the Court of Appeal ordered that "[t]he order for payment from the Fund is reduced by $2,000; as so modified it is affirmed." (16 Cal.App.3d at p. 685.) As stated by the court in that case, the sole issue was the propriety of respondent's recovery of treble damages from the Fund. In holding that such recovery was not authorized, the court said: "The Fund accrues from license fees and other special assessments against real estate brokers (§§ 10450.6, 10470). Eighty percent of the moneys in the Fund are allocated for education and research and 20 percent for satisfaction of judgments against insolvent brokers (§§ 10450.6, 10471 et seq.). Section 10471 provides, 'When any aggrieved person obtains a final judgment . . . against any person or persons licensed under this part, under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, . . . the aggrieved person may . . . file a verified application in the court in which the judgment was entered for an order directing payment out of the Real Estate Education, Research and Recovery Fund of the amount of *actual and direct loss* in such transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, . . .' (Italics added.) Appellant correctly points out that the language of the statute expressly limits recovery from the Fund to 'actual and direct loss' and thus by implication precludes recovery of treble damages, which are punitive and exemplary in nature. There is a further indication that this was the intent of the Legislature: the statute originally provided for payment from the fund of 'actual damages'; but in 1968 an amendment substituted 'actual and direct loss' for 'actual damages.' (Stats. 1968,

ch. 330, § 1, p. 712.) Under section 10471, the Fund is liable only when the judgment against the broker is based on fraud, misrepresentation, deceit or conversion of trust funds; in all these cases exemplary or punitive damages are authorized by Civil Code section 3294. The amending language is therefore meaningless unless the Legislature intended to eliminate any uncertainty as to whether 'actual damages' included punitive awards by specifying 'loss' rather than 'damages' as the measure of recovery against the Fund. Had the Legislature intended exemplary or punitive damages to be included in an award against the Fund, it could simply have called for payment of the judgment rather than payment of 'actual and direct loss.' " (*Circle Oaks Sales Co.* v. *Smith, supra,* 16 Cal.App.3d at p. 684.)

The distinction between "actual and direct loss" and "damages, which are punitive and exemplary in nature" made by the court was, of course, a valid basis for reversal of the award insofar as it included the $2,000 resulting from trebling the amount converted; it does not, however, contribute in any way to the disposition of the issue in this case. It appears, moreover, that the result of the decision was an affirmance of the award insofar as it included court costs allowed in the trial court judgment.

■ Though the recovery thereby permitted is intended to be limited in nature (a limit of $10,000 per transaction is imposed), there can be no question but that the purpose of section 10471 of the Business and Professions Code is remedial. It is intended to protect the public against loss resulting from misrepresentation and breach of fiduciary duty by real estate brokers who are unable to respond to damage awards. Within the limitation stated it must, therefore, be given a liberal construction. *Viles* v. *State of California,* 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818], states this rule as follows: "Under the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute [citations] we are of the opinion that the trial court's denial of the petition defeats the legislative objective and was an abuse of discretion."

■ Liberally construed, the language of section 10471 authorizes the inclusion of both the interest and the costs under the circumstances of this case. The 1969 amendment did not change the language in any way suggesting that such interest and costs are not properly includable. The original language referred to "the amount of actual damages up to

the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment." This language was ambiguous since the words "actual damages" could have referred as well to the amount actually awarded in the judgment as to the amount of damage actually suffered. The amendment was intended simply to eliminate this ambiguity and to distinguish between actual or compensatory damages on the one hand and punitive or exemplary damages on the other. The current language substitutes the words "actual and direct loss in such transaction" for the words "actual damages." However, by authorizing only payment "up to the sum of ten thousand dollars ($10,000) of the amount *unpaid upon the judgment*" (italics added), it makes clear that it is only damages included in the judgment that may be awarded. The effect is to limit the award to that part of an unpaid judgment which represents damages based upon actual and direct loss in the transaction with the broker.

■ The words "loss" and "damage" have long been considered virtually synonymous, and both terms refer to that which is necessary to make the plaintiff whole. In *Fay* v. *Parker* (1874) 53 N.H. 342 the court said: "A synonym of *damage* (when applied to a person sustaining an injury) is *loss.* Loss is the generic term. Damage is a species of loss. Loss signifies the act of losing, or the thing lost. Damage—in French, *dommage;* Latin, *damnum,* from *demo,* to take away—signifies the thing taken away,—the lost thing, which a party is entitled to have restored to him so that he may be made *whole* again."

In *Wilbur* v. *United States* (1929) 30 F.2d 871 [58 App.D.C. 347], the words "any loss" in a federal statute authorizing recovery by government contractors, when the loss was "occasioned by the action of any government agency by reason of priority orders" (30 F.2d at p. 872) was construed to include any diminution in gross revenue and not to be limited to net loss. The court said (*id.*): " 'Loss' means any deprivation. [Citation.] It is a generic term, of which 'damage' is a species. They are synonymous."

■ The limitation of the award to that portion of the judgment representing the plaintiff's "actual and direct loss in such transaction" does not express any intent that the plaintiff should receive anything less than that which from a monetary standpoint will serve to restore the plaintiff to the position she would have been in had Franzalia's fraud not occurred. That, moreover, is the general measure of damages applicable in tort cases. As expressed in section 3333 of the Civil Code: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the

amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Construing section 3333, this court said in *Tremeroli* v. *Austin Trailer Equip. Co.,* 102 Cal.App.2d 464, 481 [227 P.2d 923]: "The plaintiff is entitled to be placed in the same position, from a monetary standpoint, that he would have been in, had the accident not occurred."

Civil Code section 3288 permits the trier of fact to award interest in tort actions and specifies in particular cases of "oppression, fraud or malice." The inclusion of interest in the verdict pursuant to section 3288 is not the granting of damages in excess of the loss incurred. When, by virtue of the fraud or breach of fiduciary duty of the defendant, a plaintiff has been deprived of the use of his money or property and is obliged to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole. It is for this reason that it is proper to have such interest run from the time the plaintiff parted with the money or property on the basis of the defendant's fraud.

In *Conger* v. *White,* 69 Cal.App.2d 28, 40 [158 P.2d 415], the award of interest was approved. The court said: "The jury included in its verdict interest at 7 per cent upon each of the sums paid by plaintiff from the date of payment to the time of trial. Appellant contends that this was improper because there had been no rescission of the purchases and he relies upon the rules which govern in rescission cases. These, however, are not in point. The award of interest was proper under section 3288 of the Civil Code, which reads as follows: 'In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.' The allowance of interest in fraud cases was approved in *Desmond* v. *Standard Bond & Mtg. Co.* (1928), 91 Cal.App. 201 [266 P. 105]; *Isaacs* v. *Frank Meline Co.* (1934) 2 Cal.App.2d 341 [37 P.2d 1045]. We are aware of no case in which it has been held improper to allow interest, where the recovery was for fraud, since the adoption of the original code section. It should run from the date when the money was paid or the property lost, because *the duty to compensate plaintiff for her losses arose then,* and no demand was necessary." (Italics added.) It is obvious from the foregoing statement that the reason interest runs from the time the plaintiff pays money to the fraudulent defendant is that if interest were not so paid the plaintiff would not be fully compensated for his loss.

In *Redke* v. *Silvertrust,* 6 Cal.3d 94 [98 Cal.Rptr. 293, 490 P.2d 805], certiorari denied, 405 U.S. 1041 [31 L.Ed.2d 583, 92 S.Ct. 1316], the

recoverability of interest from the date of the fraud on the basis of Civil Code section 3288 was reaffirmed and the court added, with respect to a defaulting trustee such as Franzalia was in this case, the following (6 Cal.3d at pp. 106-107): "The trial court awarded Mitzi 7 percent interest on certain of Ann's stock sold by Sam following her death; interest is to run from the date of sale, rather than the date of Sam's death. Defendants contend that Sam's obligations to Mitzi did not arise until his death, and that his estate should not be held liable for interest prior to that time. Defendants fail to appreciate, however, that upon Ann's death, Sam became constructive trustee of Ann's property, with an obligation to hold *all* of that property for Mitzi's benefit. Upon Sam's breach of the agreement, Mitzi was entitled to the benefit of those statutory provisions, such as Civil Code section 2237, which measure the liability of a defaulting trustee. (See *McDaniel* v. *McDaniel,* 275 Cal.App.2d 927, 944 [80 Cal.Rptr. 837]; *Bank of America* v. *Ryan,* 207 Cal.App.2d 698, 710 [24 Cal.Rptr. 739].) *Section 2237 obligates a trustee who has wrongfully disposed of trust property to account for all profits so made, or the value of the use of the property, 'or to account for its proceeds with interest.'* Thus, the trial court properly awarded Mitzi interest, from the date of sale, upon the proceeds of the stock Sam sold during his life." (Italics added.)

The Civil Code provisions authorizing interest under these circumstances are simply a recognition of the fact that one of the elements of direct loss suffered by a party deprived of the use of his money or other property is the value of its use, which in the case of money is interest at the legal rate. We have, therefore, no hesitancy in holding that the provisions of section 10471 of the Business and Professions Code contemplate the inclusion of the interest portions of any judgment which remain unpaid up to $10,000 in the award.

The inclusion in the award of the $151.10 costs in the judgment was also proper. Section 10471 contemplates and requires that the defrauded client of the broker shall reduce his claim to judgment since it is only an amount "unpaid upon the judgment" which may be awarded. Such being the case, the remedial purpose of the statute would be frustrated if costs incurred to obtain the judgment were not taken into account to the extent they are recoverable under applicable law.

By its 1969 amendment to section 10471, the Legislature intended to eliminate punitive or exemplary damages. We find no indication that it intended to eliminate any other item of damages the inclusion of which in the judgment is authorized by the provisions of the Civil Code with

respect to damages or the provisions of the Code of Civil Procedure governing award of costs. An award of interest pursuant to the provisions of the Civil Code governing damages is not an award of punitive or exemplary damages (*Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 124-125 [38 Cal.Rptr. 440]); neither is an award of costs pursuant to the provisions of the Code of Civil Procedure.

The judgment is affirmed.

Allport, Acting P. J., and Cobey, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1975.