## IN RE APPLICATION OF RAYMOND W. JONES AND ESTHER W. JONES TO THE COMMISSIONER OF SECURITIES FOR PAYMENT OF JUDGMENT PURSUANT TO MINN. ST. 82.34

246 N. W. 2d 578.

October 15, 1976—No. 45834.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *Thomas Muck* and *Robert W. Herr,* Assistant Attorneys General, for commissioner of securities.

*Winter, Lundquist, Sherwood & Athens* and *A. H. Winter,* for applicants Jones.

TODD, JUSTICE.

Raymond W. and Esther W. Jones (the Joneses) listed their lake cottage for sale with Worthington Realty, Inc., a corporation wholly owned and controlled by James Urbach (Urbach) and his wife. The premises were sold and the deed was delivered, but Urbach wrongfully converted the amount he was supposed to forward to the Joneses pursuant to the listing agreement (the purchase price minus expenses including commission). Thereafter, Urbach filed a bankruptcy petition and in those proceedings the Joneses obtained judgment against Urbach for the gross sales price, plus interest and costs. Application was made to the commissioner of securities for payment of the judgment. The commissioner disallowed that portion of the judgment which included real estate commission, interest, and costs, but paid the balance to the Joneses.

The bankruptcy judge of the Federal District Court certified to this court[1] the following questions of law for our determination:

"1. Are applicants [the Joneses] entitled to recover from the fund the full amount of the purchase price paid to Urbach by the purchasers, [$10,000], or only the net amount applicants would have received in accordance with the listing agreement, [$8,963.00] ?[2]

"2. Are applicants entitled to recover from the fund interest on the amount (as determined above) converted by Urbach? If so, from what date does the interest begin to accrue?

"3. Are applicants entitled to recover costs in connection with the proceedings in Bankruptcy Court resulting in judgment in their favor?"

The facts are not in dispute and the following brief summary from the memoradum of the bankruptcy judge is sufficient:

"On August 2, 1973, applicants listed certain real estate for sale with Urbach. The contract provided that Urbach would receive [10%] of the proceeds from the sale of such property as commission. On September 12, 1973, applicants entered into a purchase agreement with buyers secured by Urbach whereby they agreed to sell said property for the sum of [$10,000]. The purchasers under said contract paid the sum of [$1,000] to Urbach on September 12, 1973. On November 12, 1973, the purchaser paid the balance of the purchase price to Urbach. On January 2, 1974, applicants executed a warranty deed to the purchasers for said property upon the representation of Urbach that the purchaser would pay the purchase price upon receipt of the deed. In fact, Urbach had converted the [$10,000] paid to him by the purchasers to his own use by January 2, 1974.

---

[1] Pursuant to Minn. St. 480.061, the Uniform Certification of Questions of Law Act.

[2] The sum of $37 was expended by Urbach for fees incidental to the transfer of ownership and such amount is not in controversy.

"On December 12, 1974, applicants served upon the Commissioner of Securities application for payment of said judgment from the Real Estate Education, Research and Recovery Fund pursuant to Minn. Stat. § 82.34 (1974). On January 29, 1975, the Commissioner acknowledged the liability of the fund for the sum of [$8,963] [disallowing recovery for real estate commission, interest, and costs] and directed the payment of said sum from the Fund to applicants. The Court has approved payment of said sum and payment has been made."

As the bankruptcy judge indicated in the memorandum accompanying his certification order, the only clue to the resolution of these issues in the language of the governing statute, Minn. St. 82.34, subd. 7,[3] is the undefined term "actual and direct loss." A comparison between this statutory language and that employed by other state legislatures in drafting similar statutes reveals that Minnesota's provision neither grants nor denies the recovery of the sums claimed by the Joneses as explicitly as

---

[3] Minn. St. 82.34, subd. 7, specifies the procedures for recovery from the fund: "When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person licensed under this chapter, on grounds of fraudulent, deceptive or dishonest practices, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this chapter, and which cause of action occurred on or after July 1, 1973, the aggrieved person may, upon the judgment becoming final, and upon termination of all proceedings, including reviews and appeals, file a verified application in the court in which the judgment was entered for an order directing payment out of the real estate education, research and recovery fund of the amount of actual and direct loss in such transaction up to the sum of $20,000 of the amount unpaid upon the judgment, provided that nothing in this chapter shall be construed to obligate the fund for more than $20,000 per transaction regardless of the number of persons aggrieved or parcels of real estate involved in such transaction. A copy of the verified application shall be served upon the commissioner and upon the judgment debtor, and a certificate or affidavit of such service filed with the court."

it might have. On the one hand, an Illinois statute specifies that recovery from that state's real estate recovery fund shall include "damages sustained * * * together with costs of suit and attorneys fees incurred in connection therewith of not to exceed 15% of the amount of actual damages awarded." Smith-Hurd Ill. Ann. Stat. c. 114 1/2, § 108.1 (Pocket Part 1975). At the other extreme, an Arizona statute explicitly excludes such amounts by providing for recovery of "actual or compensatory damages, and not including interest and costs." Ariz. Rev. Stat. § 32-2186A.

The commissioner contends that the real-estate-recovery-fund statute most similar to Minnesota's is contained in Cal. Bus. & Prof. Code, §§ 10450-10483 (West 1964), and that the legislative history and judicial interpretation of the California recovery provision should therefore carry weight in this court's effort to construe the analogous provision of our own statute. Prior to 1968, the California statute provided for recovery of "actual damages." Cal. Bus. & Prof. Code, § 10471 (West 1964). In 1968, an amendment eliminated this phrase and substituted therefor the words "actual and direct loss." Cal. Bus. & Prof. Code, § 10471 (West Supp. 1976). In 1971, a California appellate court construed this amended language as evincing a legislative intent to allow recovery only of compensatory, and not of exemplary or punitive, damages. The court pointed out that had the legislature intended the latter to be recoverable, it could simply have called for payment of the judgment rather than of the "actual and direct loss." Circle Oaks Sales Co. v. Smith, 16 Cal. App. 3d 682, 94 Cal. Rptr. 232 (1971). Since the Circle Oaks decision was available to the Minnesota Legislature when it modeled its recovery provision on the amended California statute, there is a presumption that the legislature thereby endorsed that construction as the proper one for the Minnesota statute as well. Olson v. Hartwig, 288 Minn. 375, 377, 180 N. W. 2d 870, 872 (1970). See, also, Nordahl v. Franzalia, 48 Cal. App. 3d 657, 121 Cal. Rptr. 794 (1975).

1. We conclude that the commissioner properly deducted

from the judgment obtained by the Joneses the commission expense of $1,000 in determining the amount which they were entitled to recover from the fund. This particular issue is one on which the California decision in the Circle Oaks case discussed *supra* has a direct bearing. For the fund to grant to the Joneses a greater recovery than that which they would have recovered pursuant to the listing agreement would be equivalent in effect to the awarding of punitive or exemplary damages. Not only are such damages beyond the contemplation of the "actual and direct loss" language, as the Circle Oaks case held, but they could not possibly serve their intended purposes of punishing the broker and deterring future fraudulent conduct on his part (see, Prosser, Torts [4 ed.] pp. 9 to 14) when paid not by the broker but by the fund. In addition, the Joneses' assertion that they are legally entitled to collect the entire amount of the judgment is soundly refuted by the observation of the California court in Circle Oaks that if the legislature had intended to make the total amount of the judgment entered recoverable from the fund, it could easily have so provided.

The statute in question is remedial in nature. It is funded by assessments made upon real estate brokers. Minn. St. 82.34, subds. 3, 4. The statute limits recovery for all claims against a single licensee to the sum of $20,000. Minn. St. 82.34, subd. 12 (a). The judgment which the claimant must obtain prior to making a claim against the fund, subd. 7, is only prima facie evidence and is not conclusive. Subd. 9. The commissioner is subrogated to the rights of the claimant to the extent of the amount paid. Subd. 17.

Considering the entire statute, we are satisfied that the recovery of claimants should be limited to the net amount they would have received but for the fraudulent acts of the broker. We further note that, should the statutory limit on recovery for all claims against a single licensee be reached, this does not preclude the Joneses from seeking recovery from Urbach for the balance of their judgment.

2. We conclude that the commissioner acted improperly in disallowing interest to the Joneses. As indicated previously, the purpose of the act is to restore claimants to the position they would have been in absent the fraud of the broker. We conclude that the inability to invest or use the funds to which they were entitled was an "actual and direct loss" to the Joneses within the meaning of the statute. A California appellate court so held in construing the same phrase in its real-estate-recovery-fund statute. Nordahl v. Franzalia, 48 Cal. App. 3d 657, 121 Cal. Rptr. 794 (1975).

The commissioner argues that this result will encourage potential claimants to delay in filing their claims for recovery from the fund. We fail to perceive the logic of that argument, as the statutory interest rate is such that a rational claimant could earn a better return by recovering the money to which he is entitled from the fund and investing it elsewhere. Further, we note that the statutory limitation of claims to the sum of $20,000 per licensee seems to mandate that the commissioner immediately upon the filing of any claim must commence statutory proceedings under § 82.34, subd. 12(b), to require that all claimants with claims against the licensee to be joined in one action to equitably determine their rights in the fund. This necessarily follows because the limits of total liability are small and proration is required if the total of claims exceeds the statutory maximum.

We next consider the issue of the date from which interest should accrue. The trial court awarded interest from the date of December 1, 1973, frankly stating in its memorandum accompanying the certification order that there was no readily apparent basis for adoption of this date. We conclude that interest should commence when the claimant would have had possession of the funds in the normal course of business. In this case, the warranty deed was not forwarded until January 2, 1974. Since mail was the means of deliverance with anticipation of return of funds by mail, we conclude that interest should have commenced on January 15, 1974, which represents the maximum

time the Joneses could reasonably have anticipated the use of such funds for their own purposes.

3. We conclude that the commissioner acted improperly in refusing to pay the costs incurred by the Joneses in obtaining judgment. Securing a final judgment against the broker was a prerequisite to filing a claim under the statute and the costs incurred in doing so thus constitute an "actual and direct loss" to the Joneses. The California appellate court in Nordahl v. Franzalia, 48 Cal. App. 3d 657, 121 Cal. Rptr. 794 (1975), interpreted this same term in the California real-estate-recovery-fund statute as including costs incurred to obtain the judgment, noting that the statute's remedial purpose would be frustrated if such costs were not recoverable. The legislature can, of course, rectify any problems which might confront the fund as a result of permitting the recovery of costs by amending § 82.34, subd. 7, to expressly proscribe their recovery.

In summary, we conclude that the law governing the questions certified to us by the Federal District Court is as follows: In an action under Minn. St. 82.34, subd. 7, against the Minnesota Real Estate Education, Research and Recovery Fund the sellers of real estate are entitled to recover from the fund: (1) The net amount they would have received in accordance with the listing agreement, not including the broker's commission; (2) interest on such net amount accruing from the date when the sellers would have had possession of the funds in the normal course of business; and (3) court-allowed costs incurred in securing a judgment against the real estate broker. Pursuant to Minn. St. 480.061, subd. 7, this opinion shall be sent to the certifying court and to the parties and shall be res judicata as to the parties.