[S. F. No. 24224. Feb. 19, 1981.]

CHARLES M. DEAS et al., Plaintiffs and Appellants, v.
CHARLES KNAPP et al., Defendants and Appellants.

COUNSEL

John Sutter for Plaintiffs and Appellants.

Evelle J. Younger and George Deukmejian, Attorneys General, Randall P. Borcherding, Deputy Attorney General, Siegfried D. Hesse, Robert P. Brorby and Dodge, Reyes, Brorby, Randall & Titmus for Defendants and Appellants.

OPINION

NEWMAN, J.—Sections 10450.6 and 10470 et seq. of the Business and Professions Code create a fund, derived from real estate license fees, for payment of claims on unsatisfied judgments against licensees for fraud or conversion of trust funds in connection with licensed activities.[1] Payment automatically suspends the judgment debtor's license until he or she reimburses the fund, with interest. (§ 10475.)

Plaintiff judgment creditors, defendant Knapp, who is a real estate broker, and the Real Estate Commissioner all appeal from an order for payment. Defendant's appeal raises the main issue before us: In statutory proceedings for satisfaction out of the fund, may the licensee relitigate the merits of the fraud claim that underlies the judgment? We conclude that section 10473.1 accords that relitigation right, superseding res judicata principles to the contrary.

Plaintiffs' and the commissioner's appeals attack the amount of the award in light of section 10474's limitation on the fund's liability to "twenty thousand dollars ($20,000) for any one licensee for which the cause of action occurred . . . prior to January 1, 1975" (§ 10474, subd. (a)). The trial court awarded $20,000 plus $226 for costs incurred in proceeding against the fund. We agree with the commissioner that the $20,000 limit is absolute and may not be exceeded, even for costs. Because the award was based on transactions occurring prior to January 1, 1975, however, we disagree with plaintiffs' contention that it should be increased either because defendant did business under more than one license or because plaintiffs' judgment became final after that date.

---

[1]Section references are to the Business and Professions Code unless otherwise indicated.

Plaintiffs sued in 1970, alleging overcharges on trust deed loans. (See § 10242, prescribing maximum charges, and § 10246, authorizing recovery of treble damages and attorney fees.) After trial the court declared the suit a class action and found that defendant charged each class member a maximum 10 percent interest plus brokerage fees for trust deed loans, representing himself merely as broker and not lender, when in fact he was lending his own money and thus could not legally charge more than maximum interest.[2] The court also found that he overcharged plaintiff Deas by setting up two loans in order to evade the limitation on brokerage charges.[3]

The judgment was for $50,225.26, comprising $1,389 for Deas, $1,525 for plaintiffs Jimmie and Norma Rines, $34,271.26 for other class members, $12,500 for attorney fees, and $540 for costs. Defendant's appeal was dismissed by the Court of Appeal on January 16, 1975.

In July 1975 plaintiffs applied for payment of the judgment out of the state fund.[4] The application was served on defendant and the commissioner, filed in the trial court, and heard before the same judge as a postjudgment proceeding. (See § 10471.) The commissioner responded by seeking limitation of the fund's liability to $20,000, proration of claims, and joinder of all claimants and prospective claimants (see §§ 10474, 10474.5) but did not deny plaintiffs' claim to be "aggrieved person[s]" having "a final judgment...under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of [transactions] when [defendant] was licensed and performing acts for which a license is required" (§ 10471, subd. (a)).

---

[2]The findings cite section 10241, subdivision (j) which, in conjunction with section 10240, requires that the broker negotiating a real estate loan give the borrower a written "statement that the real estate licensee is not the lender, either directly or indirectly." The theory on which defendant now seeks to negate liability to the class is that (1) he provided only interim funding without interest, pending commitment of a permanent lender to the loan, (2) since only the permanent lenders were paid interest he was entitled to brokerage charges, and (3) the arrangement was disclosed to each borrower.

[3]The findings state that (1) Deas borrowed $5,500 for which he was required to execute a first trust deed note for $500 and a second trust deed note for $7,000, and (2) the resulting loan charge of $2,000 exceeded the permissible maximum by $1,389. The evasion found by the court appears based on former section 10245, which exempted second, but not first, trust deed loans of $6,000 or more from the limitation on charges.

[4]The fund was then known as the "Real Estate Education, Research and Recovery Fund." (Former § 10470 et seq.) Since 1976 it has been called the "separate account in the Real Estate Fund for education, research, and recovery purposes." (§ 10470 et seq.)

Section 10473.1 permits the judgment debtor to defend the proceeding against the fund and provides, "[T]he judgment shall create a rebuttable presumption of the fraud, misrepresentation, deceit, or conversion of trust funds. This presumption is a presumption affecting the burden of producing evidence." At the hearing on the merits, plaintiffs relied on the record of proceedings that culminated in the judgment. Defendant testified and introduced his files as exhibits to rebut the presumption of fraud in loans to plaintiffs other than Deas. The court then found that (1) plaintiffs' causes of action were based on defendant's fraud;[5] (2) defendant was acting under his license (§§ 10130, 10131, subds. (d) and (e)); (3) plaintiffs made reasonable efforts to satisfy the judgment and complied with section 10472; and (4) defendant failed to meet the burden of producing evidence to overcome the presumption arising under section 10473.1. A final order was entered (1) requiring payment out of the fund of $20,000 plus $226.17 for costs in the application proceeding, (2) awarding costs of $847.41 (including the $226.17) and a fee of $6,459.59 to plaintiffs' attorney, and (3) directing distribution of the balance of $12,919.17 to plaintiffs in proportion to their shares of $37,185.26, the damages fixed by the unsatisfied judgment.[6]

We essentially agree with the disposition by the Court of Appeal of plaintiffs' and the commissioner's appeals and so adopt the following excerpts from the opinion of Justice Grodin, with the modifications indicated:

### PLAINTIFFS' APPEAL

 "Plaintiffs appeal from the judgment [against the fund] insofar as it limits their recovery to $20,000. The limitation is based on section 10474, subdivision (a), which provides that liability of the Fund shall not exceed that amount 'for any one licensee for which the cause of action occurred on or after July 1, 1964, and prior to January 1, 1975.' Plaintiffs contend that they are entitled to greater judgment because (1) at the time of the transactions involved in the underlying suit,

---

[5]The findings cite not only section 10241, subdivision (j) (see fn. 2, *ante*) but also *Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204 [108 Cal.Rptr. 71], stating a duty of disclosure relevant to the Deas loan (see fn. 3 *ante*).

[6]The $6,459.59 fee was only for the proceeding against the fund and, not being included in the earlier judgment, enlarged defendant's total liability. (On defendant's obligation to reimburse the fund see §§ 10475, 10479.) The $12,500 fee awarded by the judgment was not charged against the fund.

Knapp had three real estate licenses in effect; and (2) section 10474, subdivision (b) provides for a $40,000 limitation where the 'cause of action occurred on or after January 1, 1975,' and their ... [right to proceed against the fund did not arise until January 14, 1975, when dismissal of the appeal made the prior judgment final].

"We find both contentions to be without merit. It is true that Knapp had three licenses, the first issued to him in 1949, when he was doing business as Investors Exchange; the second in 1967 under the name Mission Mortgage and Loan; and the third in 1969, as Mutual Mortgage and Loan. Plaintiffs' judgment, however, was solely against Knapp individually, based upon allegations in their complaint that he was doing business with them as Investors Exchange. The fact that Knapp had other licenses is fortuitous, and in no way affected the plaintiffs. This aspect of the case is governed by *Fox* v. *Prime Ventures, Ltd.* (1978) 86 Cal.App.3d 333, 334-337 [150 Cal.Rptr. 202], holding that where the transaction giving rise to the judgment arose out of acts for which only one license was required, recovery is limited by the amount stipulated in the statute 'for any one licensee.'

"As regards plaintiffs' second contention, the phrase 'cause of action' in section 10474, subdivisions (a) and (b) quite clearly refers to the '[claim] underlying [the original] suit, not to the [right to file an] application for recovery from the Fund. This is made clear by the language of section 10471, which uses the term 'cause of action' in a distinct manner from the filing of a 'verified application ... for an order directing payment out of the ... Fund.' Plaintiffs' ... [causes of action arose before their] suit was filed in 1971, and their claim does not qualify for the increased limitation."

COMMISSIONER'S APPEAL

"The trial court awarded plaintiffs costs in the amount of $226.17 against the Fund in addition to the $20,000. These costs were incurred in connection with the plaintiffs' attempts to satisfy their judgment against Knapp as a precondition to application for recovery from the Fund. The commissioner does not contest the propriety of including such costs in an order for recovery against the Fund...([s]ee *Nordahl* v. *Department of Real Estate*...[1975] 48 Cal.App.3d 657 [121 Cal.Rptr. 794]), but insists that section 10474 precludes an order requiring any amount to be paid in excess of the applicable statutory

limitation. We agree. Code of Civil Procedure section 1032, subdivision (a), which provides generally for costs to a plaintiff upon judgment in his favor, is subject to the limitation 'except as otherwise expressly provided,' and section 10474 constitutes such an express limitation. While the amount of costs involved in this case is small, the amount in some cases could be quite substantial; and to render the Fund liable for unpredictable amounts in excess of the statutory limitations would defeat one of the legislative objectives."

### DEFENDANT'S APPEAL

■ Defendant's briefs attack the claims of all plaintiffs but Deas. He contends that as to them the prior judgment was erroneous, and that there is no evidence to support the finding that that judgment was based on fraud.[7] The Court of Appeal declined to consider those contentions because it concluded that, under the statutory scheme, defendant is precluded from collateral attack on the judgment and thus is bound by the underlying finding of fraud in transactions involving licensed activities. That conclusion is defended here by the commissioner as well as by plaintiffs.

The correctness of that conclusion turns on section 10473.1, which provides: "The commssioner may defend any such action on behalf of the ... Fund ... and shall have recourse to all appropriate means of defense and review, including examination of witnesses. The judgment debtor may defend any such action on his own behalf and shall have recourse to all appropriate means of defense and review, including examination of witnesses. Whenever an applicant's judgment is by default, stipulation, or consent, or whenever the action against the licensee was defended by a trustee in bankruptcy, the applicant shall have the burden of proving his cause of action for fraud, misrepresentation, deceit, or conversion of trust funds. Otherwise, the judgment shall create a rebuttable presumption of the fraud, misrepresentation, deceit,

---

[7] See footnote 2 *ante*. The Court of Appeal correctly summarizes the headings in defendant's opening brief: "Knapp contends that the underlying judgments for usury are invalid as a matter of law for the reasons that (1) fees charged by brokers for negotiating loans are not 'interest,' and there is no substantial evidence of Knapp's bad faith to support the judgments of usury; (2) Knapp's 'interim funding' procedures constituted 'loans for use,' and not 'loans for interest' subject to the usury laws; and (3) Knapp was denied a fair trial by the misuse of the class action device in the underlying action. He contends also that there is no evidence supporting the court's finding in the subsequent proceeding against the fund that the underlying judgments were based on fraud, misrepresentation, or deceit."

or conversion of trust funds. This presumption is a presumption affecting the burden of producing evidence."

Defendant contends that allowing the debtor to defend the proceeding against the fund, coupled with the provision that a contested judgment "shall create a rebuttable presumption of the fraud" that affects "the burden of producing evidence," entitles him to relitigate the merits of the fraud claim underlying the judgment. He points out that a presumption affecting the burden of producing evidence disappears when evidence is introduced that would support a finding against the presumed fact. (Evid. Code, § 604.)

Plaintiffs and the commissioner reply that defendant is barred from relitigating by well-settled principles of res judicata (see, e.g., *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]) and that, since applicability of res judicata is not expressly precluded by section 10473.1, applicability should be implied because the statute is designed to protect defrauded plaintiffs and thus should be construed liberally in their favor (citing *Nordahl, supra,* 48 Cal.App.3d 657, 663).

Before 1971 the judgment debtor had no standing to contest an application for satisfaction from the fund. Section 10473 as reworded in 1968 states in pertinent part: "Whenever the court proceeds upon an application as set forth in Section 10471, it shall order payment out of the separate account in the ... Fund ... only upon a determination that the aggrieved party has a valid cause of action within the purview of Section 10471 and has complied with the provisions of Section 10472. [¶] The judgment shall be only prima facie evidence of such cause of action and for the purposes of this article shall not be conclusive. The commissioner may defend any such action on behalf of the fund and shall have recourse to all appropriate means of defense and review including examinations of witnesses." Section 10473.1, as added in 1969, differed from its present version by (1) omitting the sentence giving the judgment debtor defense rights, and (2) stating that the judgment, instead of creating a rebuttable presumption, was "prima facie evidence, but not conclusive evidence, of the fraud ...."

*Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285 [90 Cal.Rptr. 144] held that, because the broker was not party to a proceeding against the fund, the provision for automatic suspension of his license as soon as the fund paid on the judgment (§ 10475) was unconstitutional. Except for

relief from automatic suspension, however, the broker was denied standing to oppose payment out of the fund. In 1971 section 10473.1 was amended to essentially its present form; and section 10471 was amended to require service on the debtor, as well as on the commissioner, of an application for payment out of the fund.

Thus, before 1971 a claim for payment from the fund could be defended only by the commissioner who, having not been party to the proceedings leading up to the judgment, was unrestricted by the judgment's res judicata effects. Under those circumstances, section 10473.1's pre-1971 provision that the judgment was "prima facie evidence, but not conclusive evidence, of the fraud" clearly left the commissioner free to contest the merits of the findings of fraud on which the judgment was based.

The 1971 change from "prima facie . . . but not conclusive evidence" to "rebuttable presumption . . . affecting the burden of producing evidence" (§ 10473.1) did not restrict the availability of the defense to the commissioner. Plaintiffs argue, however, that as applied to the judgment debtor that same presumption encompasses only whether the claim arose (1) "directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required," and (2) "on or after July 1, 1964" (§ 10471, subd. (a)).

Nothing on the face of section 10473.1 indicates an intent to distinguish between the defense rights of the commissioner and the debtor. Duplicate phrases give each "recourse to all appropriate means of defense and review, including examination of witnesses." The amending Legislature did not overlook the effect of the prior judgment. The Senate Judiciary Committee proposed the change from "prima facie evidence" to "rebuttable presumption" of the fraud and the provision that the presumption is one "affecting the burden of producing evidence." (1 Sen. J. (1971 Reg. Sess.) p. 1464.) Without that amendment a defending party arguably might have had the burden of disproving fraud by preponderance of the evidence. (Evid. Code, §§ 602, 606; Cal. Law Revision Com. com. to § 602, Assem. Jud. Com. com. to § 606, 29B West Ann. Evid. Code (1966 ed.) pp. 559, 569.) That strengthening of the defense case applies equally to commissioner and debtor.

The commissioner contends that a legislative intent to leave res judicata available to preclude the debtor from relitigating the underlying

fraud is indicated by a parallel applicability of res judicata in disciplinary proceedings. Section 10177.5 provides: "When a final judgment is obtained in a civil action against any real estate licensee upon grounds of fraud, misrepresentation, or deceit with reference to any transaction for which a license is required under this division, the commissioner may, after hearing in accordance with the provisions of this part relating to hearings, suspend or revoke the license of such real estate licensee." *Richards* v. *Gordon* (1967) 254 Cal.App.2d 735 [62 Cal.Rptr. 466] held that, in a proceeding under the section, the licensee (1) may be barred on res judicata grounds from introducing evidence to dispute the fraud adjudicated in the judgment, but (2) may show mitigating circumstances to minimize the discipline to be imposed.

Unlike section 10473.1, section 10177.5 is silent on the effect of the prior judgment in the proceeding involving the commissioner. There is a rational basis for legislative modification of res judicata rules in one kind of proceeding but not the other. Suspension or revocation under section 10177.5 is discretionary, and the licensee must be given a chance to show that discipline should be withheld or imposed for only a short period. Under section 10475, on the other hand, suspension automatically results from payment out of the fund and continues until the licensee reimburses the fund with interest. The amount repayable may be substantial; the $20,000 maximum applicable here has been raised to $100,000 for causes of action occurring after January 1, 1980. (§ 10474, subd. (c).) Though the licensee has full opportunity to litigate the fraud in the original action, the fact that only monetary liability is immediately involved may lull him or her into not defending it as vigorously as the later fund proceeding that can result in automatic exclusion from the real estate business. That proceeding inherently involves licensees who have limited resources (see § 10472 (requiring unsuccessful efforts to satisfy judgment)) that seem likely to be husbanded until the licensee's livelihood is directly threatened. In contrast to the dire consequences to the licensee of an adverse outcome in the fund proceeding, an outcome adverse to plaintiff results only in denying him or her a special benefit without disturbing the prior award.

We therefore construe section 10473.1 as creating a rebuttable presumption of the "fraud, misrepresentation, deceit, or conversion of trust funds" for which plaintiff was awarded judgment. If either the commissioner or the debtor introduces evidence from which the fraud may be

found nonexistent, the presumption disappears and plaintiff has the burden of proving the cause of action. The commissioner's and plaintiffs' policy arguments against that construction should be addressed to the Legislature.

Section 10473.1 does not modify the prior judgment's conclusive effect on issues other than fraud, misrepresentation, deceit, or conversion of trust funds (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 227 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]). For example, defendant's contention that he "was denied a fair trial by the misuse of the class action device" (fn. 7, *ante*) was rejected by the trial court in its conclusions of law underlying the judgment, the finality of which forecloses the contention on this appeal.

Because the Court of Appeal concluded that defendant is bound by the prior adjudication of the fraud issue, it declined to consider his contentions that he produced sufficient evidence to overcome the presumption of fraud and that the finding of fraud underlying the judgment is not supported by evidence. The case is transferred to the Court of Appeal, First Appellate District, for consideration of those contentions and disposition of the appeals. (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 254 [142 Cal.Rptr. 414, 572 P.2d 28]; *Taylor* v. *Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 895 [130 Cal.Rptr. 23, 549 P.2d 855].)

Tobriner, J., Clark, J., and Richardson, J., concurred.

**MOSK, J.,** Concurring and Dissenting—I concur in the judgment as to the principles of law involved. I do not agree with the dispositive order.

These plaintiffs initiated the lawsuit in 1970. Their judgment became final in January 1975. In July 1975 they sought recovery from the state fund. After all the lengthy administrative and judicial proceedings that followed, my colleagues now send them back again to the Court of Appeal.

I suggest that after 11 years of litigation we should without further delay reach all the issues raised rather than to impose upon the litigants and the judiciary the burden, in terms of cost, effort and delay, of an additional proceeding, perhaps to be followed by still another petition

for hearing to this court. There comes a time when finality of decision becomes almost as important as decision itself. That time has arrived in this case.

Bird, C. J., concurred.