[No. A039355. First Dist., Div. Four. Aug. 17, 1988.]

WILLIAM E. MORRIS et al., Plaintiffs and Respondents, v. DEPARTMENT OF REAL ESTATE, Defendant and Appellant.

**1110**

### COUNSEL

John K. Van de Kamp, Attorney General, Timothy G. Laddish and Calvin J. Abe, Deputy Attorneys General, for Defendant and Appellant.

Jeffrey D. Polisner, Carl P. A. Nelson and Bold & Polisner for Plaintiffs and Respondents.

### OPINION

POCHÉ, J.—Defendant, Department of Real Estate (Department), appeals from an order directing it to pay postjudgment interest to plaintiffs, William and Lois Morris, on their 1985 award in the statutory amount of $20,000 payable from the Recovery Account of the Real Estate Fund. We reverse.

On September 26, 1985, the superior court ordered the Commissioner of Real Estate to pay plaintiffs $20,000 from the Recovery Account of the Real Estate Fund. The commissioner unsuccessfully appealed that order to this court which affirmed the order in an unpublished decision of January 28, 1987. Plaintiffs moved in superior court for postjudgment interest, and on April 28, 1987, received an order directing the Department to pay such interest. The Department filed a timely notice of appeal.

 This appeal presents one legal issue: Does the statutory maximum of $20,000 per transaction imposed by Business and Professions Code[1] section 10474, subdivision (c),[2] on payments from the Recovery Account of the

---

[1] Unless otherwise noted all subsequent statutory references are to the Business and Professions Code.

[2] That section provides in pertinent part: "Notwithstanding any other provision of this chapter and regardless of the number of persons aggrieved or parcels of real estate involved in a transaction or the number of judgments against a licensee, the liability of the Recovery Account shall not exceed the following amounts: . . . [¶] (c) For causes of action which

Real Estate Fund preclude payment of additional sums in postjudgment interest? The issue is apparently one of first impression.

"Sections 10450.6 and 10470 et seq. of the Business and Professions Code create a fund, derived from real estate license fees, for payment of claims on unsatisfied judgments against licensees for fraud or conversion of trust funds in connection with licensed activities." (*Deas* v. *Knapp* (1981) 29 Cal.3d 69, 72, fn. omitted [171 Cal.Rptr. 823, 623 P.2d 775].) The fund functions, as the Legislature describes it, "by assisting in compensating individuals who have suffered economic losses by the actions of real estate licensees who are unable to respond to judgments, thereby providing greater confidence for the public in dealing with real estate brokers and salespersons licensed by the State of California." (Stats. 1987, ch. 535, § 1, subd. (a).)

The question of what losses may appropriately be compensated from the Recovery Account has been much litigated. In *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657 [121 Cal.Rptr. 794], the Court of Appeal concluded that an award could include prejudgment interest and costs. (At p. 667.) In *Nordahl,* however the total award from the fund of $9,708.07 (the principal plus prejudgment interest and costs) was less than the statutory dollar limit—in that instance $10,000—payable to a single claimant.

Six years later our state Supreme Court was presented with the question of whether plaintiffs who had been awarded the maximum recovery of $20,000 from the fund could also receive an additional $226.17 in costs. (*Deas* v. *Knapp, supra,* 29 Cal.3d at p. 75.) The court adopted the position of the Real Estate Commissioner finding that a cost award which exceeded the statutory limit was impermissible. (*Id.* at p. 76.) It reasoned "[w]hile the amount of costs involved in this case is small, the amount in some cases could be quite substantial; and *to render the Fund liable for unpredictable amounts in excess of the statutory limitations would defeat one of the legislative objectives.*" (*Ibid.,* italics added.)

The Morrises argue that *Deas* v. *Knapp* is not controlling because, they argue the right to costs created by Code of Civil Procedure section 1032 is expressly limited to "any action or proceeding" "[e]xcept as otherwise expressly provided by statute." It was on this narrow ground that the *Deas* court concluded the dollar limits of section 10474 should prevail over the right to costs created by Code of Civil Procedure section 1032. (*Deas* v.

occurred on or after January 1, 1980, twenty thousand dollars ($20,000) for any one transaction . . . ."

*Knapp, supra,* 29 Cal.3d at p. 76.) No comparable language of limitation exists in Code of Civil Procedure section 685.010, subdivision (a), which provides in pertinent part: "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Thus, the Morrises argue, the right to postjudgment interest is an absolute right which is not subject to the maximum dollar limits of section 10474.

■ In further support of their contention that the right to postjudgment interest cannot be foreclosed by section 10474, the Morrises note that article XV, section 1 of our state Constitution provides in pertinent part: "[t]he rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. . . . [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith."

The Morrises read this language to create a constitutional entitlement to postjudgment interest. We read the provision as setting a ceiling on the postjudgment interest rate established by the Legislature.

Under the Morrises' view of article XV, section 1, the September 1985 order of the superior court directing the Department to pay them $20,000 from the Recovery Fund is a judgment against the state upon which interest has accrued. In support of the argument that the state, like any other defendant, is liable for postjudgment interest the Morrises cite *Harland* v. *State of California* (1979) 99 Cal.App.3d 839 [160 Cal.Rptr. 613]. *Harland* does, indeed, hold that article XV, section 1, requires the state to pay postjudgment interest. (*Id.* at pp. 841-842.) However, the judgment in *Harland* was a judgment for a tort committed by the state; the case is inapposite. No similar wrong supports the Department's duty to pay the Morrises.

■ The Recovery Account is, in effect, a state-mandated and broker-funded insurance system. The "policy limits" and "terms of coverage" are set out in the statutory scheme. One of the Legislature's paramount concerns in establishing the fund was to spread the available money as widely as possible among those individuals who had suffered at the hands of licensees (see *Deas* v. *Knapp, supra,* 29 Cal.3d at p. 76)—hence the statute's dollar limits per transaction and per licensee. (§ 10474.)

Concern for the fund's solvency was most recently expressed in the legislative enactments of 1987 which amended sections relating to the fund; "[l]egislative action is necessary to provide sufficient funding . . . so that future claims within the intended scope of the program . . . may be paid in a prompt and timely fashion." (Stats. 1987, ch. 535, § 1, subd. (e).) The

Legislature has been careful to provide for possible fund insolvency. Thus, section 10476 provides that should the fund be unable to pay claimants, the unpaid claims will be satisfied once money is available in the sequence in which they were filed "plus accumulated interest at the rate of 4 percent a year." This interest provision is the only portion of the statutory scheme which provides for any recovery beyond the liability limits established by section 10474.

In light of the provisions and goals of the statutory scheme we cannot agree that the Recovery Account must pay a claimant who has received the maximum statutory award from the fund additional sums in postjudgment interest on the award. We have no doubt that the Legislature could have constitutionally provided that interest would never be paid on claims which were unsatisfied because of fund insolvency. Instead, they provided that such claimants would receive interest at the nominal rate of 4 percent per annum. (§ 10476.) It would be anomalous to assume that the Legislature wanted to give 4 percent interest to claimants who, through no fault of their own, had to wait for payment until the fund was solvent, but intended to give 10 percent postjudgment interest to claimants whose award went unpaid during a pending appeal.

Accordingly, we find the superior court erred as a matter of law in ordering the Department to pay postjudgment interest to claimants already entitled to receive the maximum statutory award from the Recovery Account. We reverse the order.

Anderson, P. J., and Channell, J., concurred.