[Civ. No. 29768. Fourth Dist., Div. Two. July 30, 1984.]

WILBUR ANDREPONT et al., Plaintiffs and Appellants, v.
DAVID R. MEEKER et al., Defendants and Respondents.

COUNSEL

Henry V. Cleary for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and David S. Chaney, Deputy Attorneys General, and Christopher T. Coffin for Defendants and Respondents.

OPINION

McDANIEL, J.—

### INTRODUCTION

Business and Professions Code sections 10450.6 and 10470 et seq. create a fund, derived from real estate license fees, for payment of claims on unsatisfied judgments against licensees for fraud or conversion of trust funds in connection with licensed activities.[1] Payment automatically suspends the judgment debtor's license until he or she reimburses the fund with interest. (§ 10475.) This appeal requires us to determine a novel question regarding

---

[1] Unless otherwise indicated, the following section references are to the Business and Professions Code.

application of this legislation.[2] Specifically, may a person recover from the fund when the court determines, in the hearing on the application, that the defendant was guilty of a negligent misrepresentation rather than an intentional one?

### STATEMENT OF FACTS[3]

Thomas Gill was employed as a licensed salesperson with Mutual Western Development Corporation from 1967 through 1973. Mutual was engaged in the real estate business, and its president was William Bates, a licensed broker.

In 1969, the Andreponts, Warrens, and Wancheks (Andrepont group) purchased land in Apple Valley from the Meekers through Mr. Gill. The An-

---

[2]The sections relevant to this appeal provide in pertinent part: Section 10471: "(a) When any aggrieved person obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part, and which cause of action occurred on or after July 1, 1964, the aggrieved person may, upon the judgment becoming final, file a verified application in the court in which the judgment was entered for an order directing payment out of the Recovery Account of the amount of actual and direct loss in the transaction up to the sum of ten thousand dollars ($10,000) of the amount unpaid upon the judgment, provided that nothing shall be construed to obligate that separate account for more than ten thousand dollars ($10,000) per transaction regardless of the number of persons aggrieved or parcels of real estate involved in the transaction. "... . . . . . . . . . . . . . . . . . . . ."
Section 10472: "... . . . . . . . . . . . . . . . ."
"(b) At the hearing the aggrieved person shall be required to show:
"(1) He is not the spouse of debtor, or the personal representative of such spouse.
"(2) He has complied with all the requirements of this article.
"(3) He has obtained a judgment as set out in Section 10471, stating the amount thereof and the amount owing thereon at the date of the application.
"... . . . . . . . . . . . . . . . . . . . ."
Section 10473: "Whenever the court proceeds upon an application as set forth in Section 10471, it shall order payment out of the Recovery Account only upon a determination that the aggrieved party has a valid cause of action within the purview of Section 10471 and has complied with the provisions of Section 10472.
"The commissioner may defend any such action on behalf of the Recovery Account and shall have recourse to all appropriate means of defense and review, including examination of witnesses and the right to relitigate any issues, material and relevant in the proceeding against the Recovery Account, which were determined in the underlying action on which the judgment in favor of the applicant was based. If the judgment in favor of the applicant was by default, stipulation, or consent, or whenever the action against the licensee was defended by a trustee in bankruptcy, the applicant shall have the burden of proving that the cause of action against the licensee was for fraud, misrepresentation, deceit, or conversion of trust funds. Otherwise, the judgment shall create a rebuttable presumption of the fraud, misrepresentation, deceit, or conversion of trust funds by the licensee, which presumption shall affect the burden of producing evidence."

[3]There are numerous plaintiffs and transactions involved in this case. We discuss only the facts relevant to the appeal.

drepont group had organized with the purpose of investing in land. They entered into a plan with Mutual, through Mr. Gill, wherein they would purchase a large tract of land through Mutual, hold it for a time and then subdivide it into four plots and, after a further delay, resell it, again through Mutual. Mr. and Mrs. Andrepont also invested, by themselves, in another piece of land which was to be subdivided in the same manner, and which was sold to them by Mr. Gill. After the group and the Andreponts had purchased their parcels, they discovered that neither parcel could be legally subdivided. In June 1974, the Andrepont group and the Andreponts filed a complaint against Mutual, Bates, and Gill, among others, for fraud, annullment of instruments, rescission and for damages for conspiracy to defraud, based on the events arising out of these transactions. The court issued findings of fact in the case in October 1978, finding that "William Bates, Thomas Gill and others formed a conspiracy to defraud all plaintiffs . . .," and that "Bates and Gill were real estate licensees who made fraudulent representations to the plaintiffs." The judgment decreed, in relevant part, "Plaintiffs Wilbur Andrepont and Katherine Andrepont have judgment against defendants William L. Bates and Thomas Gill in the principal sum of $4,100 plus interest thereon at the rate of seven (7%) percent per annum from April 29, 1973. Plaintiffs Wilbur Andrepont, Katherine Andrepont, Billy Warren, Beverly Warren, James Wanchek and Elaine Wanchek have judgment against the defendants, William Bates and Thomas Gill in the principal sum of $16,452.82 plus interest thereon at the rate of seven (7%) percent per annum from January 1, 1974."

Unable to collect these judgments from either Bates or Gill, the group applied in November 1979 for payment from the statutory recovery fund earlier noted.

Both Gill and the Real Estate Commissioner objected to payment from the fund on the ground that Gill had not committed fraud within the purview of section 10471. At a hearing on the matter, Gill testified that he had merely told the group that the land could be subdivided if they followed the proper procedures, and in so telling them, he was only parroting what the manager of Mutual had told him.

In its "announcement of tentative decision," the court stated in part that: "The evidence before this court is insufficient to prove that in the transactions complained of Gill committed fraud, misrepresentation, deceit or misappropriation of trust funds intentionally or with conscious disregard of the truth or falsity of his representations. At most, the evidence before this court shows that Gill was guilty of negligent misrepresentations, and, although negligent misrepresentation is a form of deceit, I interpret the statutory

phraseology and purpose to require at least an intent to deceive be shown to recover from the fund."

The court's final judgment ordered payment from the fund to the plaintiffs for the judgments against Bates, but denied payment for the judgments with respect to Gill. In so ordering, it stated: "The underlying judgment against Gill was in fact based upon fraud, misrepresentation, deceit or conversion as contemplated by the Business and Professions Code section 10471, subdivision (a). Plaintiffs have complied with the other provisions of that section, and section 10472. The applications were denied because of plaintiffs' failure to prove the fraud in the *de novo* proceeding on that issue."

Plaintiffs appeal from that part of the judgment denying their applications for payment from the fund based on their judgments against Gill. They contend: (1) fraudulent intent to deceive is not a prerequisite to recovery from the real estate fund, (2) the evidence was insufficient to support the judgment based upon failure to establish an intent to deceive, (3) fraud should have been conclusively presumed against Gill, and (4) if the judgment in favor of Gill is reversed then a reallocation of funds is necessary.

## DISCUSSION

As noted earlier, section 10472 lists certain requirements which a person must meet in order to recover from the fund. Among these is a showing that the underlying judgment against the licensed person was based on "fraud, misrepresentation, deceit or conversion of trust funds arising out of any transaction when the judgment debtor was licensed . . . ." Plaintiff contends that this litany of grounds, which in some instances must be re-proven at the application for payment from the fund (as is the case here[4]), includes negligent misrepresentation. This question has not heretofore been addressed.

■ " ' "The fundamental rule of statutory construction is that the court should ascertain the intent of the legislature so as to effectuate the purpose of the law." [Citations.]' " (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 732 [114 Cal.Rptr. 460, 523 P.2d 260].) When statutory language is susceptible of two constructions, the one which leads to the more reasonable result should be followed. (*Samarkand of Santa Barbara, Inc.* v. *County of Santa Barbara* (1963) 216 Cal.App.2d 341 [31 Cal.Rptr. 151].) The objective sought to be achieved by the statute as well as the evil

---

[4]Plaintiff contends that Gill should not have been allowed to relitigate the issue of fraud because of a change in section 10473.1. This argument is irrelevant to the disposition of this case, however, because the commissioner is entitled to relitigate the issue of fraud under section 10473, as was done here.

to be prevented is of prime consideration in the interpretation, of the statute, and where words of common usage have more than one meaning, the one which will best attain the purposes of the statute should be adopted, even though the ordinary meaning is thereby enlarged or restricted, and this is especially true where necessary to avoid absurdity or prevent injustice. (*People* ex rel *S. F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533, 543-544 [72 Cal.Rptr. 790, 446 P.2d 790].)

■ In considering the purpose of section 10471 on another issue, the court in *Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 663 [121 Cal.Rptr. 794], stated: "Though the recovery thereby permitted is intended to be limited in nature (a limit of $10,000 per transaction is imposed), there can be no question but that the purpose of section 10471 of the Business and Professions Code is remedial. It is intended to protect the public against losses resulting from misrepresentation and breach of fiduciary duty by real estate brokers who are unable to respond to damage awards. Within the limitation stated it must, therefore, be given a liberal construction. *Viles* v. *State of California* (1967) 66 Cal.2d 24, 32-33 [56 Cal.Rptr. 666, 423 P.2d 818], states this rule as follows: 'Under the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions in favor of granting relief unless absolutely forbidden by statute [citations] we are of the opinion that the trial court's denial of the petition defeats the legislative objective and was an abuse of discretion.'" In *Middelsteadt* v. *Karpe* (1975) 52 Cal.App.3d 297, 302 [124 Cal.Rptr. 840], the court noted "that the primary purpose of the real estate act (of which 10471 is but a part) is to raise the standards of the real estate profession by requiring its members to deal fairly and ethically *with their clients.*" It would appear then, that the legislation is intended both to protect consumers and encourage the real estate profession to pursue high standards.

■ With these guidelines before us, we turn to the phrase to be construed—"fraud, misrepresentation, deceit, or conversion of trust funds." Since *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487-488 [275 P.2d 15], was decided, California courts have recognized that a negligent misrepresentation is actionable as a form of deceit. Civil Code sections 1709 and 1710, as well, give such misrepresentations statutory recognition as a form of deceit. Civil Code section 1709 provides, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Civil Code section 1710, subdivision (2) provides: "A deceit within the meaning of the last section (1709) is . . . the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." And, Civil Code

section 1572 defines actual fraud as "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

Such was the state of the law when the Legislature enacted the statutes here to be interpreted. In adopting legislation, the Legislature is presumed to have had knowledge of existing laws and existing domestic judicial decisions and to have enacted an amended statute in light of such laws and decisions. (*Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) This leads us to conclude that the Legislature intended recovery from the fund for those persons who were victims of negligent misrepresentation as well as intentional misrepresentations. Had they intended to preclude recovery for negligent misrepresentations, they need only have added the words fraudulent or intentional to modify misrepresentation.

Respondent Real Estate Commissioner argues against construing the language to include negligent as well as intentional misrepresentation on two grounds.

First, he argues, although the legislation has a remedial purpose, that it also has a disciplinary purpose because section 10475 provides that, upon payment from the fund, the license of the broker or salesperson whose activities triggered the payment is automatically suspended until he or she has repaid the fund in full with interest. The commissioner therefore contends that the statute should be narrowly construed because of this harsh consequence. However, the punitive effect on the salesperson is not the controlling factor in the interpretation of a statute of this nature. For example, in *Handeland* v. *Department of Real Estate* (1976) 58 Cal.App.3d 513 [129 Cal.Rptr. 810], the court had to consider whether a real estate salesperson could be subjected to disciplinary action pursuant to section 10177, subdivision (d), which provides that "The commissioner may suspend or revoke the license of any real estate licensee . . . who has . . . [w]illfully disregarded or violated any of the provisions of the Real Estate Law . . ." when the violation committed was negligent rather than willful. In concluding that such disciplinary procedures were proper in the case of negligent violations, the court recognized the remedial as well as punitive aspects of the statute when it noted: "Disciplinary procedures provided for in the Business and Professions Code, such as section 10177, subdivision (d), are to protect the public not only from conniving real estate salesmen but also from the uninformed, negligent or unknowledgeable salesman." (*Id.,* at p. 518.)

Respondent's second argument is that a clear legislative intent not to allow recovery from the fund for merely negligent misrepresentation is illustrated by the inclusion of section 10475, which provides, in relevant part, "[a] discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this article." Respondent argues, because, under bankruptcy law a debt incurred as a result of a negligent misrepresentation will be discharged (11 U.S.C. § 523), that the Legislature did not intend to reimburse those persons who were victims of negligent misrepresentations. This clearly is a nonsequitur. In fact, logic impels a contrary result. By specifically stating that "a discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this article," the Legislature obviously intended, although a suspended licensee's debt to the fund might be discharged in bankruptcy, that their license would not be reinstated *until* they had complied with the provisions of the article.

Finally, respondent urges us to adopt a narrow definition of misrepresentation because the real estate commissioner's subrogation rights under section 10479 will be "greatly attenuated" if persons are allowed to recover from the fund for damages resulting from negligent misrepresentations. The rationale behind this argument eludes us. As noted earlier, one of the main purposes of this legislation is to *protect the public from licensees who are unable to respond to damage awards*; we find no suggestion in the language that the commissioner's subrogation rights were considered paramount to this purpose. Furthermore, the commissioner is in a better position than the judgment creditor to collect from the licensee because, even if the debt is discharged in bankruptcy, his or her license can not be restored until the amount paid out of the fund is repaid.

We therefore hold that a judgment creditor may recover from the recovery fund for claims which are found, in the de novo hearing, to be based upon negligent misrepresentations. As noted earlier, the trial court stated that the evidence demonstrated that Gill was guilty of negligent misrepresentation. Because of this conclusion, we need not discuss appellant's other contentions.

## DISPOSITION

That part of the judgment denying recovery from the fund based on the judgments entered against Gill is reversed. The trial court is directed to issue a new order in accord with our decision here, reallocating the available monies among the parties pursuant to Business and Professions Code section 10471 et seq.

Each party shall bear its own costs on appeal.

Morris, P. J., and Rickles, J., concurred.

A petition for a rehearing was denied August 29, 1984, and the opinion was modified to read as printed above.