807 F.2d 1509
 M. James LORENZ, Trustee, Plaintiff-Appellant,
v.
Paul L. SAUER, et al., Real Party in Interest, Commissioner
of Real Estate State of California, Defendant-Appellee.
M. James LORENZ, Trustee, Plaintiff-Appellant,
v.
Mark W. RIEDEL, et al., Real Party in Interest, Commissioner
of Real Estate, State of California, Defendant-Appellee.
 Nos. 85-6322, 85-6323.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1986.
Decided Jan. 15, 1987.
 
 David P. Curnow, Sullivan, McWilliams, Lewin, Markham & Disner, San Diego, Cal., for plaintiff-appellant.
 Neal J. Gobar, Deputy Atty. Gen., San Diego, Cal., for defendant-appellee.
 Appeal from United States District Court for the Southern District of California.
 Before ANDERSON, POOLE, and THOMPSON, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 M. James Lorenz, the Trustee of Coastal Equities, Inc., applied for payment from the California Real Estate Recovery Fund ("Recovery Fund") to satisfy judgments he obtained against real estate salesmen Paul Sauer and Michael Riedel. Pursuant to an assignment by several defrauded investors of their rights, Lorenz sued Sauer and Riedel and obtained judgments against them for negligent misrepresentation in connection with their sale of fractionalized real property notes and trust deeds on behalf of Coastal Equities, Inc. The district court granted summary judgment in favor of the California Commissioner of Real Estate ("Commissioner") on the ground that Lorenz as the trustee of the defrauding corporation was not an "aggrieved person" under Cal.Bus. & Prof.Code Sec. 10471. We affirm.
 
 FACTS AND PROCEEDINGS
 
 2
 Coastal Equities, Inc. ("CEI") was incorporated in 1976 for the purpose of selling fractionalized real estate notes and trust deeds[1] as well as interests in real estate limited partnerships. CEI, as it was later discovered, was actually a "Ponzi scheme" in which the high rates of return on the fractionalized notes and trust deeds were paid to the old investors with money generated by purchases from new investors. Increasing demands for new investors inevitably led to the collapse of the scheme, after which an involuntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code was filed against CEI. The petition was later converted into a Chapter 11 filing for reorganization. Lorenz, the appointed Trustee of the corporation, fashioned a plan of reorganization which was confirmed by the bankruptcy court. Among other things, the plan contained the following assignment clause:
 
 
 3
 An investor trust deed holder's presentation of an executed ballot to the Trustee shall also serve as a complete and absolute transfer and assignment to the Trustee of all of such electing investor's right, title and interest in the note and investor trust deed and any and all rights and claims held by such electing investor against or as to CEI, insiders of CEI or affiliates of CEI.
 
 
 4
 The defrauded investors involved in this action all voted for the plan, thereby assigning all their claims to Lorenz.
 
 
 5
 Pursuant to the assignments, Lorenz filed in the bankruptcy court a series of complaints against various former CEI salesmen. Among the salesmen sued were Sauer and Riedel, who were charged with negligent misrepresentation, constructive fraud, negligence, and securities fraud arising from their sale of the fractionalized notes and trust deeds. While the suits were pending, the district court withdrew its reference of the case to the bankruptcy court, and the cases were refiled in district court.
 
 
 6
 Riedel stipulated to the entry of judgment against him on the negligent misrepresentation count, and the court entered judgment in the amount of $528,470. Soon afterwards, Sauer executed a similar stipulation, and judgment for $1,956,391 was entered against him. These sums represent the aggregate face value of fractionalized notes and trust deeds sold by Sauer and Riedel to the investors who had assigned their rights to Lorenz under the reorganization plan. Neither Sauer nor Riedel was able to satisfy the full amounts of the judgments.
 
 
 7
 After each judgment, Lorenz filed an application in the district court for payment of the maximum statutory amount from the Recovery Fund pursuant to Cal.Bus. & Prof.Code Sec. 10471. The cases were consolidated, and thereafter the California Commissioner of Real Estate filed motions to dismiss the applications. Treating the motions to dismiss as motions for summary judgment, the district court denied recovery to Lorenz on the ground that "the Trustee [Lorenz] is not an 'aggrieved person' intended by the California legislature to be able to recover from the special limited fund created and payable only pursuant to Business and Professions Code sections 10471 et seq." Lorenz timely appealed. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 DISCUSSION
 
 8
 We review a grant of summary judgment de novo to determine whether there remains any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). When a decision turns upon applicable state law, and the state's highest court has not adjudicated the issue, the district court must make a reasonable determination, based upon recognized sources, as to the result that the highest state court would reach if it were deciding the case. Molsbergen v. United States, 757 F.2d 1016, 1020 (9th Cir.1985) cert. dismissed, --- U.S. ----, 106 S.Ct. 30, 87 L.Ed.2d 706. Here, the district court granted summary judgment on the basis of its interpretation of Cal.Bus. & Prof.Code Sec. 10471. The district court's construction of that statute, a legal question, is reviewed de novo. Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). Thus, our task is to predict whether the California Supreme Court would determine that the Trustee is not an "aggrieved person" under the statute.
 
 
 9
 The California legislature established the Recovery Fund to "protect the public against loss resulting from misrepresentation and breach of fiduciary duty by real estate brokers who are unable to respond to damage awards." Antonio v. Hempel, 71 Cal.App.3d 128, 130, 139 Cal.Rptr. 309, 311 (1977). The purpose of the statute is remedial, and it is to be given a liberal construction. Id. Recovery from this fund is available to
 
 
 10
 any aggrieved person [who] obtains a final judgment in any court of competent jurisdiction against any person or persons licensed under this part, under grounds of fraud [or] misrepresentation * * * arising directly out of any transaction when the judgment debtor was licensed and performed acts for which a license is required under this part * * *.
 
 
 11
 Cal.Bus. & Prof.Code Sec. 10471(a) (West Supp.1986) (emphasis added). The parties agree that the defrauded investors qualify as "aggrieved persons" under the statute. The Commissioner, however, contends that Lorenz, as the trustee for the company that perpetrated the fraud, is not such an aggrieved person.
 
 
 12
 After being assigned all the rights of the electing CEI investors, Lorenz obtained stipulated judgments against Sauer and Riedel for negligent misrepresentation in connection with their sale to the investors of fractionalized notes and trust deeds. Under California law, negligent misrepresentation is a species of actual fraud. Gold v. Los Angeles Democratic League, 49 Cal.App.3d 365, 373-74, 122 Cal.Rptr. 732, 738 (1975). California law permits assignment of causes of action for fraud. American Trust Co. v. California Western States Life Insurance Co., 15 Cal.2d 42, 67, 98 P.2d 497, 509 (1940); Jackson v. Deauville Holding Co., 219 Cal. 498, 500, 27 P.2d 643, 644 (1933). In particular, a cause of action to recover damages for fraud in the sale of interests in real estate is assignable. Wikstrom v. Yolo Fliers Club, 206 Cal. 461, 463-66, 274 P. 959, 960 (1929). Under this theory, the electing investors could assign to Lorenz their causes of action against Sauer and Riedel. The Commissioner assumes for purposes of summary judgment that the investors did in fact assign these actions.
 
 
 13
 The Recovery Fund provides for compensation to an aggrieved person who obtains a judgment against a licensed real estate salesman on the grounds of fraud or misrepresentation. Cal.Bus. & Prof.Code Sec. 10471(a) (West Supp.1986). A judgment for negligent misrepresentation qualifies for recovery under the fund because the claim is actionable as a form of deceit. Andrepont v. Meeker, 158 Cal.App.3d 878, 884-85, 204 Cal.Rptr. 887, 891 (1984). While the Commissioner does not attack the assignment by the electing investors of their negligent misrepresentation claims, he in effect argues that these claims are unassignable for the purpose of qualifying Lorenz to receive payment from the Recovery Fund. The Commissioner maintains that the California legislature intended recovery from the fund only for the party who actually was injured by the actions of the licensee. In this case, that means that application must be made by the investors themselves.
 
 
 14
 In construing the term "aggrieved person" under the statute, California courts have looked to the general purpose of the act of which the statute is a part, Middlesteadt v. Karpe, 52 Cal.App.3d 297, 302, 124 Cal.Rptr. 840, 843 (1975), as well as the specific purpose of the statute itself, Andrepont, 158 Cal.App.3d at 883-84, 204 Cal.Rptr. at 890. The primary purpose of the real estate act is to raise the standards of the real estate profession by requiring fair and ethical behavior by its members towards their clients. Middlesteadt, 52 Cal.App.3d at 302, 124 Cal.Rptr. at 843. The Recovery Fund was established in an effort to protect the public against such breaches of behavior by licensees who are unable to respond to damage awards. Nordahl v. Franzalia, 48 Cal.App.3d 657, 663, 121 Cal.Rptr. 794, 798 (1975). With these purposes in mind, the statute is to be given a liberal construction. Id.
 
 
 15
 The primary case construing the term "aggrieved person" is Middlesteadt. There, a licensed real estate broker applied for an order directing payment out of the Recovery Fund to satisfy a judgment the broker had obtained against her former employee, a licensed real estate saleswoman. The underlying judgment was to recover a portion of the commissions the saleswoman had received in negotiating a real estate exchange. The saleswoman had obtained the commissions without the knowledge of the broker and in violation of their oral agreement providing for a 50-50 division of the commissions the saleswoman earned. The court concluded that the broker, although herself the defrauded judgment creditor, did not qualify as an aggrieved person eligible to recover from the fund under the statute. Middlesteadt, 52 Cal.App.3d at 302, 124 Cal.Rptr. at 844.
 
 
 16
 The court began by noting that the protected class under the real estate act is not the real estate licensees but their clients. Id. at 302, 124 Cal.Rptr. at 844. Since the underlying claim in that case was merely an internal business dispute not involving any fraud or deceit perpetrated on clients, recovery by the broker would not further the purposes of the statute. Moreover, the court observed that real estate licensees do not need the protection provided by the fund since they themselves are in a better position than the general public to guard against the deceitful and fraudulent acts of their colleagues. Id. "[I]n light of the state policy underlying the real estate act, the broad provision of section 10471 must be read to the effect that the aggrieved person who is entitled to compensation from the Recovery Fund must be client or a member of the general public." Id.
 
 
 17
 The Commissioner maintains that since Lorenz is not a client or a victimized member of the public, he is not entitled to apply for recovery from the fund. We find that position too broad since it would preclude any assignee or representative of a member of the public who was directly defrauded by a licensee from applying for recovery from the fund. The Middlesteadt case does not suggest such a sweeping restriction.
 
 
 18
 While we do not hold that no assignee or representative of such an aggrieved person may apply for recovery under the statute, we agree with the Commissioner that the purposes of the statute would not be furthered by allowing recovery in this case by Lorenz as the trustee of CEI. Here, the investors assigned their rights against CEI, its affiliates and insiders in exchange for common stock in the corporation. Under the plan of reorganization, the money Lorenz recovers pursuant to the assigned causes of action is pooled together, and, after the liabilities of the corporation are paid out, the remaining money is divided among the shareholders. The Commissioner rightly points out that under the plan the compensation received from the Recovery Fund will not likely be fully realized by the defrauded investors. Some of that money may be used to pay expenses of administration, priority tax claims, etc. Consequently, the money recovered from the fund will be used in part to benefit the estate of the wrongdoer. Such a consequence was not intended by the California legislature in establishing this limited fund. The fund was designed to aid the victimized client who, having relied on the broker's or salesperson's licensure by the state of California, finds himself not only defrauded but also unable to recoup his investment. Since recovery in this case by the trustee of the defrauding corporation would not further this purpose, we hold that Lorenz does not qualify as an aggrieved person under Sec. 10471. The summary judgment is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 A fractionalized note and trust deed is an investment wherein a group of investors pool their money and loan the aggregate amount to a real estate project. In return, the project gives the investors a promissory note backed by a trust deed in which all of the investors are named as promisees with interests in proportion to their investment