[No. D006135. Fourth Dist., Div. One. Feb. 8, 1988.]

■JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc., Plaintiff and Respondent, v.
JOHN J. AUGUSTYN, Defendant and Appellant.

**COUNSEL**

Klitgaard & Jones and Robert J. Klitgaard for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Neal J. Gobar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—John J. Augustyn appeals a judgment in this proration class action lawsuit (Bus. & Prof. Code,[1] § 10474.5) distributing the $100,000 Burton Recovery Account fund from the Recovery Account of the Real Estate fund to certain investors in a statewide second trust deed Ponzi scheme perpetrated by real estate broker Wayne Burton and his "investment counselors." The Recovery Account is a continuing appropriation for carrying out the Real Estate Recovery Program. (§§ 10450, 10450.6.) Generally, the Real Estate Recovery Program (§ 10470 et seq.) permits persons who have obtained final judgment against a real estate licensee for fraud, misrepresentation, deceit or conversion of trust funds arising directly out of a transaction in which the licensee performed acts for which the license was required, to apply to the Department of Real Estate for payment from the Recovery Account of the amount unpaid on the judgment up to certain limits. (§ 10471.) In 1987, the Legislature declared the Real Estate Recovery Program insolvent. (Stats. 1987, ch. 535, § 1, subd. (c).)

Augustyn contends that under the statutory scheme, and particularly sections 10471, subdivision (a), 10474, and 10474.5, the judgment is contrary to law. He also contends that because there has since been entered a judgment against Burton for $11 million in a class action in San Bernardino County Superior Court, and the San Bernardino judgment is final, that court is the proper court for a proration action involving the Burton Recovery Account. We conclude the judgment under review is contrary to the statutory scheme as to claimants who did not obtain final judgments against Burton and make reasonable collection efforts on those judgments. We therefore reverse.

### FACTS

We need not repeat the nature of the second trust deed Ponzi scheme perpetrated between November 1979 and March 1981 by licensed real estate broker Burton and his "investment counselors" who solicited, negotiated and otherwise dealt directly with investors in matters requiring a real estate license. Those facts are aptly described in *Edmonds* v. *Augustyn* (1987) 193 Cal.App.3d 1056, 1059-1060 [238 Cal.Rptr. 704], among other cases. (See *id*. at p. 1059, fn. 2.)

A number of investors obtained judgments against some of Burton's investment counselors based on the counselor's personal negligent misrepre-

---

[1] All statutory references are to the Business and Professions Code unless otherwise specified.

sentations or other breaches of fiduciary duty. In 1985, these investors began filing applications against the Recovery Account of the Real Estate Fund under section 10471. The total amounts claimed substantially exceed the $100,000 limit per licensee of section 10474.

As pointed out in *Augustyn* v. *Superior Court* (1986) 186 Cal.App.3d 1221, 1224 [231 Cal.Rptr. 298], Augustyn purchased two promissory notes from Kai I. Gulve, a real estate licensee acting as investment counselor in Burton's organization. Augustyn has secured a judgment against Gulve for losses, but has not sued Burton. Gulve has filed bankruptcy. Unable to recover all his judgment from Gulve, Augustyn has also sought recovery against the Gulve Recovery Account. Augustyn has not applied for any recovery from the Burton Recovery Account fund.

The Real Estate Commissioner (Commissioner) first filed a proration petition in Orange County Superior Court. The Orange County court declined to take jurisdiction and stay application proceedings which had been filed in San Diego. Then, on March 31, 1986, the Commissioner filed the San Diego proration petition resulting in the judgment here under review. The Orange County case was dismissed.

In the meantime, on August 6, 1986, a class action on behalf of the investors was filed in the San Bernardino Superior Court (case No. 233620). That class action resulted in a May 6, 1987, judgment for $11 million against Burton. This is the first judgment entered against Burton and it has become final.

This is Augustyn's second appeal in the San Diego case. In the first appeal from an August 13, 1986, declaratory relief judgment, this court held "the statutory scheme does not preclude a judgment debtor from electing which licensee to recover against where multiple licensees are involved . . . [W]here multiple licensed real estate personnel are involved in a transaction performing acts requiring a license (and thus the existence of multiple licenses is not fortuitous) and individual conduct of each results in a judgment on a ground stated in section 10471, the victim may seek recovery from the Recovery Fund of any licensed judgment debtor." (*Edmonds* v. *Augustyn, supra,* 193 Cal.App.3d 1056, 1067, fn. omitted; review den. Oct. 22, 1987.) Accordingly, we reversed the trial court judgment which had limited defrauded investors' recovery to the individual $100,000 account of Burton in the Real Estate Fund's Recovery Account and precluded recovery from any of Burton's licensed subagents' recovery accounts in the Real Estate Fund.

The April 7, 1987, judgment appealed from in this case includes Augustyn and other investors who have no judgment against Burton.

## Discussion

Until January 1, 1988, section 10471, subdivision (a), provided: "(a) When an aggrieved person obtains a final judgment in a court of competent jurisdiction against a defendant based upon the defendant's fraud, misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction in which the defendant, while licensed under this part, performed acts for which that license was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account, within the limitations specified in Section 10474, of the amount unpaid on the judgment which represents an actual and direct loss to the claimant in the transaction." (Stats. 1985, ch. 690.)[2] The limitations specified in section 10474, as applicable to this case, are $20,000 for any one transaction and $100,000 for any one licensee, "regardless of the number of persons aggrieved or parcels of real estate involved in a transaction or the number of judgments against a licensee, . . . ." (§ 10474.)

Section 10474.5 provides: "If the amount of liability of the Recovery Account as provided for in Section 10474 is insufficient to pay in full the valid claims of all aggrieved persons by whom claims have been filed against any one licensee, the amount shall be distributed among them in the ratio that their respective claims bear to the aggregate of the valid claims, or in any other manner as the court deems equitable. Distribution of any moneys shall be among the persons entitled to share therein, without regard to the order of priority in which their respective judgments may have been obtained or their claims have been filed. Upon petition of the commissioner, the court may require all claimants and prospective claimants against one licensee to be joined in one action, to the end that the respective rights of all claimants to the Recovery Account may be equitably adjudicated and settled."

---

[2] Effective January 1, 1988, section 10471, subdivision (a) reads: "10471. (a) When an aggrieved person obtains a final judgment in a court of competent jurisdiction or an arbitration award which includes findings of fact and conclusions of law rendered in accordance with the rules established by the American Arbitration Association or another recognized arbitration body, and in accordance with Sections 1281 to 1294.2, inclusive, of the Code of Civil Procedure where applicable, and where the arbitration award has been confirmed and reduced to judgment pursuant to Section 1287.4 of the Code of Civil Procedure, against a defendant based upon the defendant's fraud, misrepresentation, or deceit, made with intent to defraud, or conversion of trust funds arising directly out of any transaction not in violation of Section 10137 or 10138 in which the defendant, while licensed under this part, performed acts for which that license was required, the aggrieved person may, upon the judgment becoming final, file an application with the Department of Real Estate for payment from the Recovery Account, within the limitations specified in Section 10474, of the amount unpaid on the judgment which represents an actual and direct loss to the claimant in the transaction." (Stats. 1987, ch. 535, § 3.)

 Augustyn contends that since the Commissioner's section 10474.5 proration petition joined persons who had not obtained a final judgment against Burton, the petition is flawed and the judgment must be reversed. It is his position that to have "valid claims" within the language of section 10474.5, persons must have final judgments against the licensee against whose Recovery Account the claim and proration is being made.

While we do not accept Augustyn's entire argument, we think it is very clear from the language of section 10471, subdivision (a), referring to a "final judgment" and permitting application for payment from the Recovery Account "upon the judgment becoming final," that persons aggrieved due to the described acts of licensees, as a prerequisite to recovery from the Recovery Account, must be judgment creditors of the licensee. The remaining subdivisions of section 10471, making reference to the judgment in all but three of the numbered or lettered subparts, permit no doubt that this conclusion is correct.[3] Indeed, subdivision (c)(6)(D), in its requirement that the application show efforts made to collect the judgment, could not more clearly reflect the legislative intent to require both a judgment and collection efforts before eligibility arises to tap the Recovery Account for payment.

---

[3] As section 10471 read when the judgment under review was entered, subdivisions (b) through (c) provided, in part: "(b) The application shall be delivered in person or by certified mail to an office of the department and a copy served on the judgment debtor in accordance with Section 10471.1 not later than one year after the judgment has become final.

"(c) The application shall be made on a form prescribed by the department, verified by the claimant, and shall include the following: . . .

". . . . . . . . . . . . . . . . .

"(3) The identification of the judgment, the amount of the claim and an explanation of its computation.

"(4) A detailed narrative statement of the facts in explanation of the allegations of the complaint upon which the underlying judgment is based.

"(5) The name and address of the judgment debtor or, if not known, the names and addresses of persons who may know the judgment debtor's present whereabouts.

"(6) The following representations and information from the claimant:

"(A) That he or she is not a spouse of the judgment debtor nor a personal representative of the spouse. . . .

". . . . . . . . . . . . . . . . .

"(C) That the judgment underlying the claim meets the requirements of subdivision (a).

"(D) A description of searches and inquiries conducted by or on behalf of the claimant with respect to the judgment debtor's assets liable to be sold or applied to satisfaction of the judgment, an itemized valuation of the assets discovered, and the results of actions by the claimant to have the assets applied to satisfaction of the judgment.

"(E) That he or she has diligently pursued collection efforts against other judgment debtors and all other persons liable to the claimant in the transaction that is the basis for the underlying judgment.

"(F) That the application was mailed or delivered to the department no later than one year after the underlying judgment became final.

"(d) The application form shall include detailed instructions with respect to documentary evidence, pleadings, court rulings, and the products of discovery in the underlying litigation to be appended to the application."

Section 10474.5 also very clearly contemplates the prerequisite of a judgment by referring to "persons entitled to share" in terms of "the order of priority in which their respective judgments may have been obtained," and by speaking of all claimants' rights to the recovery account being "equitably *adjudicated* and settled." (Italics added.)

■ Contrary to Augustyn's view, we conclude for purposes of a proration petition under section 10474.5, persons may have "valid claims" without first having obtained a judgment against the licensee as required by section 10471, subdivision (a). Such persons may simply be "claimants and prospective claimants against one licensee to be joined in one action" upon petition of the Commissioner. (§ 10474.5.) ■ However, consistently with Augustyn's position we conclude that in light of the final judgment prerequisite of section 10471, subdivision (a), the claims of aggrieved persons who do not have a final judgment against the licensee must first be adjudicated in either the proration or another proceeding, and the judgment against the licensee must become final, before the distribution of money from the Recovery Account may be ordered.

The legislative scheme contemplates the aggrieved persons will pursue their civil remedies in obtaining and seeking to collect on a judgment against the licensee before becoming eligible for payment from the recovery account "of the amount unpaid on the judgment." (§ 10471, subd. (a).) In this connection, we observe the 1987 legislation amending section 10471 includes a requirement that an applicant be given notice of his or her obligation to protect the judgment from being discharged in bankruptcy (§ 10471, subd. (d)), further demonstrating the need to make collection efforts before the eligibility arises.

The court adjudicating the Commissioner's proration petition may adopt reasonable procedures to permit the claimants to first obtain a judgment in the same or another proceeding, allow the judgment to become final, engage in appropriate collection efforts and finally apply for and obtain a judgment allowing payment from the Recovery Account "in the ratio that their respective claims bear to the aggregate of the valid claims, or in any other manner as the court deems equitable." (§ 10474.5.) Only in this way will the statutory requisites to payment from the Recovery Account be fulfilled. Since such a procedure was not followed in this case, the judgment must be reversed.[4]

---

[4] Such a procedure was not followed in the case because Augustyn did not obtain a final judgment against Burton. (§ 10471, subd. (a).)

We express no opinion on the reasonableness of any other feature of the procedure used in the case, which in any event is not disclosed in the record on appeal. Our holding is limited to the validity of the April 7, 1987, proration judgment under section 10474.5 where the prerequisites of section 10471 were not fulfilled.

With respect to the San Bernardino County class action judgment against Burton, that judgment may furnish the basis for the claims against the Burton Recovery Account. ■ Nothing in the statutory scheme in effect when this action was filed,[5] however, required the section 10474.5 proration action to be brought in the county where the judgment against the licensee is entered. Even if there were such a requirement, on the record before us there is no demand for change of venue and the matter is deemed waived. (*Brock* v. *Superior Court* (1947) 29 Cal.2d 629, 634-635 [177 P.2d 273, 170 A.L.R. 521]; 3 Witkin Cal. Procedure (3d ed. 1985) Actions, §§ 545, 546, pp. 572, 573.) Accordingly, the existence of the San Bernardino County Superior Court judgment against Burton does not otherwise affect the San Diego County proration proceeding.

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions to conduct further proceedings consistent with the views expressed in this opinion.

Wiener, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied February 26, 1988, and the opinion was modified to read as printed above.

---

[5] Operative January 1, 1987, section 10471.6 provides for venue in cases of this type in any court of competent jurisdiction in which a judgment meeting the requirements of section 10471 has been entered against the licensee. Section 10471.6 reads: "At any time prior to the rendering of a decision on a claim if the commissioner determines that the aggregate valid claims of all aggrieved persons against that licensee are likely to exceed the limits of liability in Section 10474, the commissioner shall, in lieu of further administrative proceedings, initiate a proration proceeding pursuant to Section 10474.5 in any court of competent jurisdiction in which a judgment meeting the requirements of Section 10471 has been entered against the licensee."

Under fundamental principles of interpretation, this section is to be construed as having only prospective effect. (See *Aetna Cas. & Surety Co.* v. *Inc. Acc. Com.* (1947) 30 Cal.2d 388, 393-395 [182 P.2d 159].)